UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.: 0:22-cv-60774-RAR

ANNA BARTHA,

     Plaintiff,

vs.

MOCA LLC, *in personam*, and
M/Y *MOCA*, a 65-meter Benetti motor yacht
registered with the Cayman Islands Shipping
Registry as Official Number 747107 and
IMO Number 9695262, her engines, tenders,
tackle, apparel and appurtenances, *in rem*,

     Defendants.

_____/

## **VERIFIED AMENDED COMPLAINT**

     Plaintiff, Anna Bartha, sues Defendants, Moca LLC, *in personam*, and M/Y *Moca*,

a 65-meter Benetti motor yacht registered with the Cayman Islands Shipping Registry as

Official Number 747107 and IMO Number 9695262, *in rem*, and alleges:

## **JURISDICTION AND VENUE**

     1.    Plaintiff, Anna Bartha ("Bartha") invokes the Court's federal question

jurisdiction under Title 28 U.S.C. § 1331 for purposes of asserting Jones Act negligence

claims against her employer, Defendant, Moca LLC,  under Title 46 U.S.C. § 30104.

     2.    Ms. Bartha invokes the Court's admiralty jurisdiction under Title 28

U.S.C. § 1333(1) for purposes of asserting:

     a.   Unseaworthiness claims against Defendants, Moca LLC and M/Y *Moca*, under general maritime law; and,

     b.   Maintenance and Cure claims against her employer, Moca LLC and M/Y *Moca*, under general maritime law.

3.    Ms. Bartha invokes Federal Rule of Civil Procedure 9(h) and Rule C of the Supplemental Rules for Admiralty or Maritime Claims for purposes of arresting and obtaining jurisdiction over the *in rem* Defendant, M/Y *Moca*.

4.    Title 28 U.S.C. § 1367 provides the Court with supplemental jurisdiction to resolve all matters related to any claim that falls outside the Court's original jurisdiction.

5.    Defendant, Moca LLC, is subject to personal jurisdiction in the State of Florida under Florida Statute § 48.193 because it:

     a.   Operates, conducts, engages in, or carries on a business or business venture in this state or has an office or agent in this state;

     b.   Committed tortious acts within this state;

     c.   Owns, uses, possesses property (the Yacht) within this state; and/or,

     d.   Defendants are engaged in substantial and not isolated activity within this state.

6.    M/Y *Moca* is currently located in the territorial jurisdiction of the U.S. District Court for the Southern District of Florida.

7.     The Court is the proper venue for Bartha's suit because significant events relating to this action occurred in Broward County, there are witnesses who reside and work in Broward County, and the Yacht's home port is in Broward County.

8.     M/Y *Moca* and Moca LLC are entered for protection and indemnity risks with Assuranceforeningen Skuld ("Skuld") with a combined single limit of Five Hundred Million Dollars ($500,000,000.00) and this coverage was in effect at all times Bartha was employed by Moca LLC.  See ECF No. 14, ¶ 6.

9.     On October 11, 2022, Skuld issued a Letter of Undertaking ("LOU") to serve as substitute security for Bartha's claims against M/Y *Moca* and/or Moca LLC.  A copy of Skuld's LOU is attached hereto as Exhibit "1."

## THE PLAINTIFF

10.     Ms. Bartha is a 40-year-old Polish citizen who holds a U.S. Permanent Resident Card a/k/a "Green Card" since 1992.  She is a resident of the State of Florida.

11.     At all times material, Bartha was employed by Moca LLC to serve as the chief stewardess aboard M/Y *Moca*.

12.     On or about the early morning hours of September 4, 2021, Bartha sustained a right bimalleolar ankle fracture, and right distal tibia/fibula syndesmotic injury, when she fell down a set of stairs while working aboard M/Y *Moca*.

13.     Ms. Bartha underwent surgery for open reduction internal fixations of her right bimalleolar ankle fracture and right distal tibia/fibula syndesmosis on September 10, 2021.

14.   The Jones Act employer, Moca LLC, failed to provide Bartha with maintenance and cure until she reached maximum medical cure.

15.   Ms. Bartha had to work to support herself while she was not at maximum medical cure because of the Defendants' failure to provide her maintenance.

16.   Ms. Bartha's physical recovery has been delayed because of the Defendants' failure to provide her maintenance and cure, including the failure to provide prompt, proper and adequate medical care.

17.   Ms. Bartha had to retain the services of Stroup & Martin, P.A. to file this action to procure her maintenance and cure.

## THE DEFENDANTS AND THEIR AGENTS

18.   Defendant, Moca LLC, is a Cayman Islands limited liability company.

19.   Moca LLC's base of operations is in Broward County, Florida, which is supported by numerous facts, including, but not limited to:

a.   Moca LLC's manager for the Yacht is located in Broward County, Florida;

b.   The Yacht's primary mooring location is in Broward County, Florida;

c.   The insurance policies that provide coverage for Moca LLC identify the Yacht's principal mooring location as Florida;

d.   Moca LLC pays the Yacht's expenses through bank accounts maintained in Broward County, Florida;

     e.    Moca LLC markets the Yacht for charter through a Florida licensed yacht broker in Broward County, Florida; and,

     f.    Other facts that will be revealed through discovery.

20.    Joseph and Nazee Moinian (hereinafter the "Moinians"), are U.S. citizens.

21.    The Moinians are the principal owners and managing members of Moca LLC.

22.    Moca LLC owns *in rem* Defendant, M/Y *Moca*, which is a 65-meter (213-foot) Benetti motor yacht registered with the Cayman Islands Shipping Registry as Official Number 747107 and IMO Registry as 9695262 (hereinafter the "Yacht").

23.    Hill Robinson International, Inc. ("Hill Robinson"), is a Florida corporation that maintains its principal office at 1845 Cordova Road, Suite 212, Fort Lauderdale, Florida 33316.

24.    Hill Robinson provides management services for recreational luxury vessels, including the Yacht.

25.    Hill Robinson also finds crew members for yacht owners, like Moca LLC.

26.    Moca LLC contracted Hill Robinson to manage the Yacht and find suitable crew members for them.

27.    Hill Robinson is the actual or apparent agent of Moca LLC.

28.    Moca LLC is vicariously or technically liable for Hill Robinson's acts and/or omissions concerning the Yacht's management.

29.    The Court has personal jurisdiction over M/Y *Moca* because Skuld issued the October 11, 2022 LOU to serve as substitute security for the Yacht.  The LOU provides in relevant part:

2.  In the event of a settlement as agreed between the parties hereto, or any final judgment, after appeal, if any, entered in favor of Bartha *in rem* against M/Y *MOCA* and/or *in personam* against the Owners/Assureds in the above referenced lawsuit, Skuld agrees to pay and satisfy such final and unappealable judgment or settlement, up to but not exceeding the sum of U.S. four million dollars ($4,000,000.00), inclusive of interest and costs.  See Exhibit "1," ¶ 2.

3.  Upon demand and pursuant to court order, to cause to be filed a bond in form and sufficiency of surety satisfactory to you and/or to the United States District Court for the Southern District of Florida, for an amount up to U.S. four million dollars ($4,000,000.00), securing Bartha's claim against said M/Y MOCA in rem, as substitute security for the *in rem* claims against the Owners.  In the event that the bond referred to is filed, the undersigned shall have no further obligations under paragraphs 2 and 4 of this Letter of Undertaking.  See Exhibit "1," ¶ "3."

4.  It is further agreed that any appearance and Verified Statement of Interest filed shall stand with the same force and effect as if the M/Y *MOCA* had actually been seized, arrested and/or attached in navigable waters within the jurisdiction of the United States District Court for the Southern District of Florida under a warrant of arrest in rem and/or process of attachment and garnishment, and had thereafter been duly released by the issuance of a Letter of Undertaking or the posting of a bond or cash deposit to respond to Bartha's *in rem* and/or *in personam* claims arising out of or in any way related to the aforementioned incident.  See Exhibit "1," ¶ 4.

## UNSEAWORTHY CONDITIONS AND THE INCIDENT

30.   The Moinians lived aboard the Vessel during the time Bartha served as chief stewardess.

31.   The Moinians issued many direct instructions to the Yacht's crew, including Bartha, concerning how to perform their work.

32.     Every morning at breakfast Bartha met with Mr. Moinian where he would provide directions for the day such as making sure someone is always on bar service, cleaning and organizing the wine room, directions about meal service, steaming the wardrobe, and doing walk throughs of the Yacht with Bartha checking lighting and temperatures.

33.     Mrs. Moinian would direct Bartha about how to arrange flowers on the Yacht, address personal grooming issues with other female crew members, how to set the dining table, how to set up the buffet, how to pack and unpack the Moinians' luggage, and turning on/off the air conditioning systems throughout the Yacht.

34.     Moca LLC had the crew, including Bartha, work more than 12 hours a day.

35.     The Yacht experienced high crew turn-over due to Moca LLC's exacting demands and long work hours.

36.     The Yacht can accommodate 24 crew members.

37.     However, the Yacht was staffed with about 16 crew members while Bartha served as chief stewardess.

38.     Moca LLC required the crew to wear a specific uniform and shoes while working aboard the Yacht.

39.     Moca LLC supplied the uniforms and shoes to the crew.

40.     On or about August 24, 2021, Sharon Matte, a Hill Robinson employee in the Fort Lauderdale office, called Bartha at home and asked if she was immediately available to serve as the Yacht's chief stewardess.

41.     Ms. Bartha happened to be available and she subsequently spoke with the Yacht's captain about the chief stewardess position.

42.     The Yacht's captain, acting on behalf of Moca LLC, hired Bartha by verbal agreement to serve as the chief stewardess.

43.     The verbal employment agreement was that Bartha would serve as chief stewardess for the Yacht at a day rate of $325.00.

44.     On August 26, 2021, Bartha joined the Yacht and started working as chief stewardess.

45.     Ms. Bartha was provided a uniform when she joined the Yacht.

46.     Ms. Bartha asked for shoes in her size but none were available.

47.     Ms. Bartha was not allowed to wear her own shoes pending delivery of the properly sized work shoes.

48.     Another crew member provided Bartha a spare set of work shoes but they were too big for Bartha's feet.

49.     The Yacht's galley is located on a deck that is below the dining area.

50.     The Yacht is equipped with a dumbwaiter to enable the crew to move plates, dishes, glassware, and eating utensils between the galley and dining area.

51.     The Yacht's dumbwaiter was broken or out-of-service during the term of Bartha's employment.

52.     The Yacht is also equipped with a guest elevator that enables the owner and guests to move from deck to deck.

53.     However, the Yacht's elevator was also broken or out-of-service during the term of Bartha's employment.

54.     On or about the early morning hours of September 4, 2021, the Yacht was moored in the navigable waters of the United States of America and the Moinians were hosting numerous family members for the Jewish holiday.

55.     Ms. Bartha started working at 9:30 AM, September 3, 2021 and continued to work until the incident occurred about 2:00 AM, September 4, 2021.

56.     At approximately 2:00 AM, September 4, 2021, Bartha had to move a tray loaded with plates and dishes from the dining area, down a steep staircase, to the galley because the Yacht's dumbwaiter was out-of-service.

57.     Ms. Bartha could not use the guest elevator as an alternative method to move the dirty plates, etc., from the dining area to the galley because it was out of service.

58.     As Bartha, who was fatigued, wearing shoes too large for her feet, and carrying a loaded tray down the stairs, her right foot slipped out of the oversized shoe, she fell, and sustained a right bimalleolar ankle fracture and right distal tibia/fibula syndesmotic injury.

## COUNT I
## BARTHA'S UNSEAWORTHINESS CLAIM AGAINST MOCA LLC

59.     Ms. Bartha re-alleges the allegations contained in paragraphs 2(a), 3, 5 through 13, and 18 through 58 of the Verified Amended Complaint as if fully set forth herein.

60.     This cause of action is governed by the general maritime law of the United States of America.

61.     General maritime law provides for joint and several liability between tortfeasors.

62.     Moca LLC and M/Y *Moca* are joint tortfeasors in regard to the September 4, 2021 incident.

63.     Moca LLC has an absolute, non-delegable duty to provide a seaworthy vessel to the crew, including Bartha, so that the vessel is reasonably safe and fit for its intended purpose.

64.     On or about September 4, 2021, Moca LLC breached its non-delegable duty to provide Bartha a reasonably safe and fit vessel because of one or more of the following defects that existed at the time of the incident:

   a.    There were inadequate rest hours for the crew, including Bartha;

   b.    Bartha was provided oversized shoes to perform the work. Stated in a different way, the Yacht did not have a supply of shoes to properly outfit new crew members;

   c.    The Yacht's dumbwaiter was not in working order;

   d.    The Yacht's guest elevator was not in working order;

   e.    The Yacht did not have sufficient crew to perform all of the work demanded of them and allow for necessary rest hours;

     f.    The Yacht's stairs were not reasonably safe because they were too steep, the steps were not wide enough for the crew to safely descend the stairs, the steps were not the same distance apart, the steps did not have sufficient non-skid on them, or the non-skid was allowed to deteriorate to where they did not provide a sufficient anti-skid surface, or other defects that may be learned through discovery; and/or,

     g.    There was inadequate or no safety management and/or inspections of the Yacht to: (i) identify hazards on board; (ii) make sure the equipment, like the dumbwaiter and elevator, were maintained in proper working order; (iii) make sure the Yacht was staffed with sufficient numbers of crew; (iv) make sure crew were allowed sufficient rest; (v) ensure the Yacht was supplied with appropriate sizes of footwear for the crew; (vi) or, alternatively, establish a rule that would allow the crew, like Bartha, to use their own shoes until proper fitted work shoes are provided to them.

65.    Ms. Bartha sustained serious and permanent injuries during the September 4, 2021 incident and her injuries were proximately caused by Moca LLC's breach of the non-delegable duty to provide a seaworthy vessel that was reasonably fit for its intended purpose.

66.     As a direct or proximate result of the unseaworthiness of the Yacht, Bartha sustained damages consisting of past and future pain and suffering, mental anguish, past and future loss of enjoyment of life, permanent physical impairment, permanent disability, disfigurement, aggravation of any previously existing conditions, past and future medical expenses in the care and treatment of her injuries, past and future loss of wages, and loss of earning capacity.

67.     Ms. Bartha's injuries are permanent and continuing in nature and she will suffer losses and impairment in the future.

68.     Ms. Bartha's unliquidated damages for past and future pain and suffering, past and future loss of enjoyment of life, mental anguish, disability, disfigurement, past and future loss of earnings, loss of earning capacity, and other loss of physical functions are substantial and estimated to be in excess of U.S. one million dollars (>$1,000,000.00).

WHEREFORE, Plaintiff, Anna Bartha, demands the Court enter final judgment against Defendant, Moca LLC, jointly and severally, and award her compensatory damages, prejudgment interest, costs and such other and further relief the Court deems proper.  To the extent necessary, Plaintiff, Anna Bartha, also requests the Court to enter such Orders as may be necessary to compel Assuranceforeningen Skuld and/or the surety bond company to pay the amounts awarded to Plaintiff.  The Court has personal jurisdiction over Assuranceforeningen Skuld for purposes of compelling Skuld to meet its obligations under the LOU.  See Exhibit "1," ¶ 6.

## COUNT II
## BARTHA'S UNSEAWORTHINESS CLAIM AGAINST M/Y *MOCA*

69.     Ms. Bartha re-alleges paragraphs 2(a), 3, 5 through 13, 18 through 58, and

62 of the Verified Amended Complaint as if fully set forth herein.

70.     Under the general maritime law, the Yacht is considered a juristic person

whose acts and omissions, although brought about by her personnel, are personal acts of

the vessel for which, as a juristic person, it is legally responsible.  *Canadian Aviator v.*

*U.S.*, 324 U.S. 215, 224, 65 S.Ct. 639, 644 (1945); *The John G. Stevens*, 170 U.S. 113, 121,

18 S.Ct. 544, 547-48 (1898).

71.     Seamen, like Bartha, can sue the shipowner <u>and</u> vessel for

unseaworthiness.  *McAllister v. Magnolia Petroleum Co.,* 357 U.S. 221, 226, 78 S.Ct. 1201,

1205 (1958); *Mahnich v. Southern S.S. Co.,* 321 U.S. 96, 99, 64 S.Ct. 455, 457 (1944).

72.     M/Y *Moca* has an absolute, non-delegable duty to be a seaworthy vessel for

the crew, including Bartha, so that it is reasonably safe and fit for its intended purpose.

73.     On or about September 4, 2021, M/Y *Moca* breached its non-delegable

duty to be a reasonably safe and fit vessel for Bartha because of one or more of the

following defects or unseaworthy conditions that existed at the time of the incident:

a.  There were inadequate rest hours for the crew, including
    Bartha;

b.  Bartha was provided oversized shoes to perform the work.
    Stated in a different way, the Yacht did not have a supply of
    shoes to properly outfit new crew members;

c.  The Yacht's dumbwaiter was not in working order;

d.  The Yacht's guest elevator was not in working order;

e.  The Yacht did not have sufficient crew to perform all of the work demanded of them and allow for necessary rest hours;

f.  The Yacht's stairs were not reasonably safe because they were too steep, the steps were not wide enough for the crew to safely descend the stairs, the steps were not the same distance apart, the steps did not have sufficient non-skid on them, or the non-skid was allowed to deteriorate to where they did not provide a sufficient anti-skid surface, or other defects that may be learned through discovery; and/or,

g.  There was inadequate or no safety management and/or inspections of the Yacht to: (i) identify hazards on board; (ii) make sure the equipment, like the dumbwaiter and elevator, were maintained in proper working order; (iii) make sure the Yacht was staffed with sufficient numbers of crew; (iv) make sure crew were allowed sufficient rest; (v) ensure the Yacht was supplied with appropriate sizes of footwear for the crew to use; (vi) or, alternatively, establish a rule that would allow the crew, like Bartha, to use their own shoes until proper fitted work shoes are provided to them.

74.     Ms. Bartha sustained serious and permanent injuries during the September 4, 2021 incident and her injuries were proximately caused by M/Y *Moca*'s breach of its non-delegable duty to be a seaworthy vessel that was reasonably fit for its intended purpose.

75.     As a direct or proximate result of the unseaworthiness of the Yacht, Bartha sustained damages consisting of past and future pain and suffering, mental anguish, past and future loss of enjoyment of life, permanent physical impairment, permanent disability, disfigurement, aggravation of any previously existing conditions, past and future medical expenses in the care and treatment of her injuries, past and future loss of wages, and loss of earning capacity.

76.     Ms. Bartha's injuries are permanent and continuing in nature and she will suffer losses and impairment in the future.

77.     Ms. Bartha's unliquidated damages for past and future pain and suffering, past and future loss of enjoyment of life, mental anguish, disability, disfigurement, past and future loss of earnings, loss of earning capacity, and other loss of physical functions are substantial and estimated to be in excess of U.S. one million dollars (>$1,000,000.00).

78.     Ms. Bartha has a preferred maritime tort lien against M/Y *Moca* for her injuries and damages.

79.      Ms. Bartha is entitled under the general maritime law to foreclose her maritime tort lien against the *in rem* Defendant, M/Y *Moca*, which is secured by Skuld's LOU (or a surety bond).  See Exhibit "1" attached hereto.

15

WHEREFORE, Plaintiff, Anna Bartha, demands the following relief:

A.    That the Court decree that Plaintiff, Anna Bartha, has a preferred maritime tort lien upon the *in rem* Defendant, M/Y *Moca*, and that her lien is secured by Skuld's LOU (or surety bond, if any);

B.    That judgment be entered against the *in rem* Defendant, M/Y *Moca*, jointly and severally, for all of Plaintiff's damages together with prejudgment interest, and costs;

C.    That the Court foreclose Plaintiff, Anna Bartha's, preferred maritime tort lien against M/Y *Moca* and order Assuranceforeningen Skuld (or surety bond company, if applicable) to pay Anna Bartha the amount of the judgment award; and,

D.    For such other relief this Court may deem just and proper.

## COUNT III
## BARTHA'S JONES ACT NEGLIGENCE CLAIM AGAINST MOCA LLC

80.    Ms. Bartha re-alleges the allegations in paragraphs 1, 5 through 14, and 18 through 58 of the Verified Amended Complaint as if fully set forth herein.

81.    This is a Jones Act negligence cause of action against Moca LLC in its capacity as Bartha's employer.

82.    Moca LLC owes a duty of care to provide the crew, including Bartha, a reasonably safe place to work.

83.    Moca LLC breached its duty of care to provide Bartha a reasonably safe place to work because of one or more of the following acts or omissions:

a.   There were inadequate rest hours for the crew, including Bartha;

b.   Bartha was provided oversized shoes to perform her work and/or she was not allowed to wear her own properly fitted shoes until appropriately sized footwear was provided to her;

c.   The Yacht's dumbwaiter was not maintained in working order to allow the crew, including Bartha, to use it;

d.   The Yacht's guest elevator was not maintained in working order to allow the crew, including Bartha to use it;

e.   The Yacht did not have sufficient crew to perform all of the work demanded of them and allow the crew, including Bartha, to have necessary rest hours;

f.   The Yacht's stairs were not maintained in reasonably safe condition because they were too steep, the steps were not wide enough for the crew to safely descend the stairs, the steps were not the same distance apart, the steps did not have sufficient non-skid on them, or the non-skid was allowed to deteriorate to where they did not provide a sufficient anti-skid surface, or other defects that may be learned through discovery; and/or,

g.    There was inadequate or no inspections made to: (i) identify hazards on board the Yacht and rectify them; (ii) ensure the equipment was kept in proper working order; (iii) make sure the crew, including Bartha, were provided sufficient rest/sleep; (iv) ensure there was a proper supply of shoes for the crew; (v) or, alternatively, allow the crew to work in their own shoes until properly fitted work shoes were provided to them.

84.    Ms. Bartha sustained serious and permanent injuries during the September 4, 2021 incident and her injuries were directly or proximately caused by Moca LLC's breach of its duty to provide a reasonably safe place to work.

85.    As a direct or proximate result of Moca LLC's breach of duty to provide a reasonably safe place to work, Bartha sustained damages consisting of past and future pain and suffering, mental anguish, past and future loss of enjoyment of life, permanent physical impairment, permanent disability, disfigurement, aggravation of any previously existing conditions, past and future medical expenses in the care and treatment of her injuries, past and future loss of wages, and loss of earning capacity.

86.    Ms. Bartha's injuries are permanent and continuing in nature and she will suffer losses and impairment in the future.

WHEREFORE, Plaintiff, Anna Bartha, demands the Court enter final judgment against Defendant, Moca LLC, jointly and severally, and award her compensatory damages, prejudgment interest, costs and such other and further relief the Court deems

proper.

## COUNT IV
## BARTHA'S JONES ACT NEGLIGENCE CLAIM AGAINST MOCA LLC
## FOR FAILURE TO PROVIDE PROMPT, PROPER AND ADEQUATE CARE

87.    Ms. Bartha re-alleges the allegations in paragraphs 1, 5 through 14, and 18 through 58 of the Verified Amended Complaint as if fully set forth herein.

88.    This is a separate Jones Act negligence cause of action against Moca LLC that concerns its failure to provide Bartha with prompt, proper, and adequate medical care after she was injured on or about September 4, 2021.

89.    Moca LLC paid wages to Bartha to December 10, 2022.

90.    Moca LLC has not paid wages or maintenance to Bartha since December 11, 2022.

91.    As of October 21, 2022, no medical doctor has declared Bartha at maximum medical cure.

92.    Indeed, Bartha needs further medical treatment to get her to maximum medical cure.

93.    Moca LLC has a duty to investigate Bartha's need for maintenance (i.e. a reasonable living allowance) and cure (medical care to treat Bartha's work related injuries).

94.    Moca LLC breached its duty to investigate by not taking action to determine whether Bartha was receiving proper medical care or how much financial support she needed while she was not fit to work.

95.    In addition, Moca LLC, as Bartha's employer, owes a duty of reasonable

care to provide Bartha with prompt, proper, and adequate medical care until she reaches maximum medical cure.

96. Ms. Bartha sent numerous emails to Moca LLC's agent, Hill Robinson, requesting maintenance and cure. See Composite Exhibit "2."

97. Despite Bartha's repeated requests for maintenance and cure, Moca LLC has not:

    a. Provided maintenance to Bartha from December 11, 2021 through October 21, 2022;

    b. Reimbursed Bartha for her out-of-pocket medical expenses;

    c. Reimbursed Bartha for her living expenses while she was injured and in need of medical treatment; nor,

    d. Made arrangements for Bartha to receive medical treatment so that she can attain maximum medical cure.

98. Basically, Moca LLC notified the crew health insurance company about Bartha's work-related injury after the incident but did nothing afterward. See Composite Exhibit "2."

99. After the lawsuit was filed, Moca LLC's appointed defense counsel obtained signed HIPAA releases from Bartha.

100. Bartha's counsel also forwarded copies of Bartha's medical records, and maintenance and cure documentation to Moca LLC's defense counsel.

101. As of October 21, 2022, Moca LLC has not paid any maintenance to Bartha nor has it reimbursed her out-of-pocket medical and living expenses.

20

102.    As of October 21, 2022, Moca LLC has not made arrangements for Bartha to receive curative treatment so that she can attain maximum medical cure.

103.    The crew health insurance policy that Moca LLC procured for the crew, including Bartha, had limits, exclusions, and restrictions that adversely affected Bartha's ability to recover from her work-related injuries.

104.    Moca LLC's duty to provide injured crew, like Bartha, with medical care after they are injured or fall ill in the service of the Yacht is not controlled or defined by the terms and conditions of the crew health insurance policy.

105.    Rather, Moca LLC's duty to provide maintenance and cure is governed by general maritime law.

106.    Moca LLC has a duty to provide Bartha with a reasonable living allowance ("maintenance") and pay medical bills for treating Bartha's work related injuries ("cure") until the medical doctors declared she reached maximum medical cure.

107.    Ms. Bartha currently requires additional medical treatment, which may include surgery to remove some of the hardware from the initial leg/ankle surgery.

108.    Moca LLC breached its duty of care to provide Bartha with prompt, proper, and adequate medical care by failing to timely investigate Bartha's need for medical treatment and by failing to provide her with medical treatment until she reached maximum medical cure.

109.    Since Moca LLC and the Yacht did not provide maintenance and cure, Bartha was forced back to work out of economic compulsion while she was not fit for duty.

110.   Ms. Bartha tried to work for about 10 days aboard another luxury yacht but she was unable to continue because of significant pain and swelling in her injured ankle/leg.

111.   Ms. Bartha sustained more mental anguish by having to work on a bum ankle/leg.

112.   Ms. Bartha could not continue working as a luxury yacht stewardess because her injured ankle/leg significantly interfered with her ability to walk up/down staircases, bend, stoop, walk, and stand on her feet for the long hours necessary to fulfill the job requirements.

113.   Ms. Bartha went to work as a waitress for a friend who owns a restaurant because she has to take frequent breaks because of the pain and swelling in her injured ankle/leg, and she is unable to walk or stand for long periods of time.

114.   Ms. Bartha's physical recovery from her work-related injuries has been delayed because of Moca LLC's failure to provide prompt, proper, and adequate medical care.

115.   In addition, Bartha's pain and suffering, and mental anguish have been aggravated by having to return to work out of economic compulsion and before she attains maximum medical cure.

116.   Furthermore, Moca LLC's failure to provide maintenance to Bartha, reimburse her out-of-pocket medical expenses, and pay for her outstanding medical bills has further aggravated Bartha's mental anguish, and it has ruined her credit rating, which will adversely affect her enjoyment of life for years into the future.

22

117.    As a direct or proximate result of Moca LLC's breach of duty to provide prompt, proper, and adequate medical care, and maintenance and cure, Bartha sustained damages for aggravation of her pain and suffering, aggravation of her mental anguish, aggravation of her loss of enjoyment of life, and aggravation of her loss of earning capacity.

WHEREFORE, Plaintiff, Anna Bartha, demands the Court enter final judgment against Defendant, Moca LLC, and award her compensatory damages, prejudgment interest, costs and such other and further relief the Court deems proper.

## COUNT V
## BARTHA'S MAINTENANCE AND CURE CLAIM AGAINST MOCA LLC

118.    Ms. Bartha re-alleges the allegations in paragraphs 2(b), 3, and 5 through 58 of the Verified Amended Complaint as if fully set forth herein.

119.    This is a cause of action for maintenance and cure.

120.    Moca LLC and M/Y *Moca* are jointly and severally liable for Bartha's maintenance and cure.

121.    Despite knowing about Bartha's injuries, Moca LLC did not take adequate steps to investigate Bartha's claims for medically needed treatment, her need for maintenance while she is unable to work because of her work-related injuries, or the amount owed to her for her out-of-pocket medical and living expenses.

122.    Moca LLC has a non-delegable duty to provide Bartha with maintenance and cure for her work-related injuries, which occurred during her service aboard the Yacht.

123. Moca LLC breached its non-delegable duty to provide Bartha with maintenance and cure by:

    a. Failing to adequately investigate Bartha's maintenance and cure claim, including her need for curative treatment and living expenses while she is not fit for duty;

    b. Failing to reimburse Bartha for out-of-pocket medical and living expenses;

    c. Failing to make timely arrangements for Bartha to receive follow-up curative care after her initial surgery;

    d. Failing to pay maintenance to support Bartha while she is undergoing curative treatment;

    e. Failing to pay all of Bartha's medical expenses for her injuries; and,

    f. Forcing Bartha to return to work through economic compulsion when she is not physically fit to do so.

124. Moca LLC willfully and arbitrarily failed to investigate and pay maintenance and provide cure to Bartha for her work-related injuries, and such conduct aggravated and/or prolonged her recovery for which Bartha seeks compensatory damages for her pain and suffering, mental anguish, permanent disability, future lost earnings, medical expenses incurred, reasonable attorney's fees for having to file this action to procure maintenance and cure, punitive damages to deter Moca LLC from engaging in this type of conduct in the future, and court costs.

WHEREFORE, Plaintiff, Anna Bartha, demands the Court enter final judgment against Defendant, Moca LLC, jointly and severally, and award her compensatory damages, punitive damages, attorneys' fees, prejudgment interest, costs and such other and further relief the Court deems proper.

### COUNT VI
### BARTHA'S MAINTENANCE AND CURE CLAIM AGAINST M/Y *MOCA*

125.    Ms. Bartha re-alleges the allegations in paragraphs 2(b), 3, and 5 through 58 of the Verified Complaint as if fully set forth herein.

126.    This is a cause of action for maintenance and cure against M/Y *Moca*, *in rem*.

127.    Despite knowing about Plaintiff's injuries, M/Y *Moca* did not take adequate steps to investigate Bartha's claims for medically needed treatment, her need for maintenance while she is unable to work because of her work-related injuries, or the amount owed to her for her out-of-pocket medical expenses.

128.    M/Y *Moca* has a non-delegable duty to provide Bartha with maintenance and cure for her injuries, which occurred during her service aboard the Yacht.

129.    M/Y *Moca* breached its non-delegable duty to provide Bartha with maintenance and cure by:

    a.  Failing to adequately investigate Bartha's maintenance and cure claim, including her need for curative treatment and living expenses while she is not fit for duty;

  b. Failing to reimburse Bartha for out-of-pocket medical and living expenses;

  c. Failing to make timely arrangements for Bartha to receive follow-up curative care after her initial surgery;

  d. Failing to pay maintenance to support Bartha while she is undergoing curative treatment;

  e. Failing to pay all of Bartha's medical expenses for her injuries; and/or

  f. Forcing Bartha to return to work through economic compulsion when she is not physically fit to do so.

130. Ms. Bartha has a preferred maritime lien against the Yacht for her maintenance and cure.

131. Ms. Bartha brings this action to foreclose her preferred maritime lien against the Yacht, which is secured by Skuld's LOU.  See Exhibit "1."

132. M/Y *Moca* willfully and arbitrarily failed to pay maintenance and provide cure to Bartha for her injuries, and such conduct aggravated and/or prolonged her recovery for which Bartha seeks compensatory damages for her pain and suffering, mental anguish, permanent disability, future lost earnings, medical expenses incurred, reasonably attorney's fees for having to file this action to procure maintenance and cure, punitive damages to deter this type of conduct in the future, and court costs.

  WHEREFORE, Plaintiff, Anna Bartha, demands the Court provide the following relief:

A.  That the Court decree that Plaintiff, Anna Bartha, has a preferred maritime lien for maintenance and cure upon the *in rem* Defendant, M/Y *Moca*, and that her lien is secured by Skuld's LOU (or surety bond, if any);

B.  That judgment be entered against the *in rem* Defendant, M/Y *Moca*, jointly and severally, for all of Plaintiff's damages together with prejudgment interest, and costs;

C.  That the Court foreclose Plaintiff, Anna Bartha's, preferred maritime lien for maintenance and cure against M/Y *Moca* and order Assuranceforeningen Skuld (or surety bond company, if applicable) to pay Anna Bartha the amount of the judgment award; and,

D.  For such other relief this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

133.  Ms. Bartha demands a jury trial of her Jones Act negligence claim as of statutory right.  In addition, Bartha moves the Court to allow a jury trial of her maritime claims pursuant to Federal Rule of Civil Procedure 39(c) and the Supreme Court's holding in *Fitzgerald v. United States Lines Co.,* 374 U.S. 16 (1962).

Dated:  October 21, 2022.

Respectfully submitted,

By:  */s/ Farris J. Martin III*
    FARRIS J. MARTIN III
    Florida Bar No. 879116
    JAMES W. STROUP
    Florida Bar No. 842117
    Stroup & Martin, P.A.
    119 Southeast 12th Street

27

Fort Lauderdale, Florida 33316
Telephone: (954) 462-8808
E-mail:  fmartin@strouplaw.com
E-mail:  jstroup@strouplaw.com
*Attorneys for Plaintiff*

[Plaintiff's verification of the Complaint is on the next page].

## VERIFICATION

1.     I, Anna Bartha, am over twenty-one years of age and make this verification in support of my action against the Defendants.

2.     I have read the Verified Amended Complaint, I know the contents thereof, and the facts alleged therein are true based on my personal knowledge, information, and belief.

3.     I was employed as chief stewardess aboard M/Y *Moca*, a 65-meter Benetti motor yacht, from August 26, 2021 to September 4, 2021. I sustained serious personal injuries while working on M/Y *Moca* on September 4, 2021.

4.     Mr. Joseph Moinian and Mrs. Nazee Moinian lived aboard M/Y *Moca* during my employment and they both gave me daily instructions about my work.

5.     I have not been declared at maximum medical cure. I need further curative treatment to reach maximum medical cure.

6.     I am not receiving maintenance and cure from my employer, Moca LLC, or M/Y *Moca*.

Pursuant to Title 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 21, 2022.

_____
Anna Bartha

29

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with this Court's CM/ECF docketing system this 21st day of October, 2022, and that it is being served via CM/ECF on the counsel of record shown on the Service List.

By:  /s/ Farris J. Martin, III
FARRIS J. MARTIN, III
Florida Bar No.: 879916

## SERVICE LIST

Darren Friedman, Esq.
Cecile von Batemberg, Esq.
Foreman Friedman, P.A.
2 South Biscayne Boulevard
Suite 2300
Miami, Florida  33131
Telephone:  (305) 358-6555
Email: dfriedman@fflegal.com
Email:  cvbatemberg@fflegal.com
*Counsel for Defendants*