UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

IN ADMIRALTY

CASE NO.: 0:22-cv-60774-RAR

ANNA BARTHA,

Plaintiff,

vs.

MOCA LLC, *in personam*, and
M/Y *MOCA*, a 65-meter Benetti motor yacht registered with the Cayman Islands Shipping Registry as Official Number 747107 and IMO Number 9695262, her engines, tenders, tackle, apparel and appurtenances, *in rem*,

Defendants.
_______________________________________/

**VERIFIED SECOND AMENDED COMPLAINT**

Plaintiff, Anna Bartha, sues Defendants, Moca LLC, *in personam*, and M/Y *Moca*, a 65-meter Benetti motor yacht registered with the Cayman Islands Shipping Registry as Official Number 747107 and IMO Number 9695262, *in rem*, and alleges:

**JURISDICTION AND VENUE**

1. Plaintiff, Anna Bartha ("Bartha") invokes the Court's federal question jurisdiction under Title 28 U.S.C. § 1331 for purposes of asserting Jones Act negligence claims against her employer, Defendant, Moca LLC, under Title 46 U.S.C. § 30104.

2. Ms. Bartha invokes the Court's admiralty jurisdiction under Title 28 U.S.C. § 1333(1) for purposes of asserting:

a. Unseaworthiness claims against Defendants, Moca LLC and M/Y *Moca*, under general maritime law; and,

b. Maintenance and Cure claims against her employer, Moca LLC and M/Y *Moca*, under general maritime law.

3. Ms. Bartha invokes Federal Rule of Civil Procedure 9(h) and Rule C of the Supplemental Rules for Admiralty or Maritime Claims for purposes of arresting and obtaining jurisdiction over the *in rem* Defendant, M/Y *Moca*.

4. Title 28 U.S.C. § 1367 provides the Court with supplemental jurisdiction to resolve all matters related to any claim that falls outside the Court's original jurisdiction.

5. Defendant, Moca LLC, is subject to personal jurisdiction in the State of Florida under Florida Statute § 48.193 because it:

a. Operates, conducts, engages in, or carries on a business or business venture in this state or has an office or agent in this state;

b. Committed tortious acts within this state;

c. Owns, uses, possesses property (the Yacht) within this state; and/or,

d. Defendants are engaged in substantial and not isolated activity within this state.

6. M/Y *Moca* is currently located in the territorial jurisdiction of the U.S. District Court for the Southern District of Florida.

7. The Court is the proper venue for Bartha's suit because significant events relating to this action occurred in Broward County, there are witnesses who reside and work in Broward County, and the Yacht's home port is in Broward County.

8. M/Y *Moca* and Moca LLC are entered for protection and indemnity risks with Assuranceforeningen Skuld ("Skuld") with a combined single limit of Five Hundred Million Dollars ($500,000,000.00) and this coverage was in effect at all times Bartha was employed by Moca LLC. See ECF No. 14, ¶ 6.

9. On October 11, 2022, Skuld issued a Letter of Undertaking ("LOU") to serve as substitute security for Bartha's claims against M/Y *Moca* and/or Moca LLC. A copy of Skuld's LOU is attached hereto as Exhibit "1."

**THE PLAINTIFF**

10. Ms. Bartha is a 40-year-old Polish citizen who holds a U.S. Permanent Resident Card a/k/a "Green Card" since 1992. She is a resident of the State of Florida.

11. At all times material, Bartha was employed by Moca LLC to serve as the chief stewardess aboard M/Y *Moca*.

12. On or about the early morning hours of September 4, 2021, Bartha sustained a right bimalleolar ankle fracture, and right distal tibia/fibula syndesmotic injury, when she fell on a set of stairs while working aboard M/Y *Moca*.

13. Ms. Bartha underwent surgery for open reduction internal fixations of her right bimalleolar ankle fracture and right distal tibia/fibula syndesmosis on September 10, 2021.

14. The Jones Act employer, Moca LLC, failed to provide Bartha with maintenance and cure until she reached maximum medical cure.

15. Ms. Bartha had to work to support herself while she was not at maximum medical cure because of the Defendants' failure to provide her maintenance.

16. Ms. Bartha's physical recovery has been delayed because of the Defendants' failure to provide her maintenance and cure, including the failure to provide prompt, proper and adequate medical care.

17. Ms. Bartha had to retain the services of Stroup & Martin, P.A. to file this action to procure her maintenance and cure.

**THE DEFENDANTS AND THEIR AGENTS**

18. Defendant, Moca LLC, is a Cayman Islands limited liability company.

19. Moca LLC's base of operations is in Broward County, Florida, which is supported by numerous facts, including, but not limited to:

a. Moca LLC's manager for the Yacht is located in Broward County, Florida;

b. The Yacht's primary mooring location is in Broward County, Florida;

c. The insurance policies that provide coverage for Moca LLC identify the Yacht's principal mooring location as Florida;

d. Moca LLC pays the Yacht's expenses through bank accounts maintained in Broward County, Florida;

e. Moca LLC markets the Yacht for charter through a Florida licensed yacht broker in Broward County, Florida; and,

f. Other facts that will be revealed through discovery.

20. Joseph and Nazee Moinian (hereinafter the "Moinians"), are U.S. citizens.

21. The Moinians are the principal owners and managing members of Moca LLC.

22. Moca LLC owns *in rem* Defendant, M/Y *Moca*, which is a 65-meter (213-foot) Benetti motor yacht registered with the Cayman Islands Shipping Registry as Official Number 747107 and IMO Registry as 9695262 (hereinafter the "Yacht").

23. Hill Robinson International, Inc. ("Hill Robinson"), is a Florida corporation that maintains its principal office at 1845 Cordova Road, Suite 212, Fort Lauderdale, Florida 33316.

24. Hill Robinson provides management services for recreational luxury vessels, including the Yacht.

25. Hill Robinson also finds crew members for yacht owners, like Moca LLC.

26. Moca LLC contracted Hill Robinson to manage the Yacht and find suitable crew members for them.

27. Hill Robinson is the actual or apparent agent of Moca LLC.

28. Moca LLC is vicariously or technically liable for Hill Robinson's acts and/or omissions concerning the Yacht's management.

29. The Court has personal jurisdiction over M/Y *Moca* because Skuld issued the October 11, 2022 LOU to serve as substitute security for the Yacht. The LOU provides in relevant part:

> 2. In the event of a settlement as agreed between the parties hereto, or any final judgment, after appeal, if any, entered in favor of Bartha *in rem* against M/Y *MOCA* and/or *in personam* against the Owners/Assureds in the above referenced lawsuit, Skuld agrees to pay and satisfy such final and unappealable judgment or settlement, up to but not exceeding the sum of U.S. four million dollars ($4,000,000.00), inclusive of interest and costs. See Exhibit "1," ¶ 2.
>
> 3. Upon demand and pursuant to court order, to cause to be filed a bond in form and sufficiency of surety satisfactory to you and/or to the United States District Court for the Southern District of Florida, for an amount up to U.S. four million dollars ($4,000,000.00), securing Bartha's claim against said M/Y MOCA in rem, as substitute security for the *in rem* claims against the Owners. In the event that the bond referred to is filed, the undersigned shall have no further obligations under paragraphs 2 and 4 of this Letter of Undertaking. See Exhibit "1," ¶ "3."
>
> 4. It is further agreed that any appearance and Verified Statement of Interest filed shall stand with the same force and effect as if the M/Y *MOCA* had actually been seized, arrested and/or attached in navigable waters within the jurisdiction of the United States District Court for the Southern District of Florida under a warrant of arrest in rem and/or process of attachment and garnishment, and had thereafter been duly released by the issuance of a Letter of Undertaking or the posting of a bond or cash deposit to respond to Bartha's *in rem* and/or *in personam* claims arising out of or in any way related to the aforementioned incident. See Exhibit "1," ¶ 4.

## UNSEAWORTHY CONDITIONS AND THE INCIDENT

30. The Moinians lived aboard the Vessel during the time Bartha served as chief stewardess.

31. The Moinians issued many direct instructions to the Yacht's crew, including Bartha, concerning how to perform their work.

32. Every morning at breakfast Bartha met with Mr. Moinian where he would provide directions for the day such as making sure someone is always on bar service, cleaning and organizing the wine room, directions about meal service, steaming the wardrobe, and doing walk throughs of the Yacht with Bartha checking lighting and temperatures.

33. Mrs. Moinian would direct Bartha about how to arrange flowers on the Yacht, address personal grooming issues with other female crew members, how to set the dining table, how to set up the buffet, how to pack and unpack the Moinians' luggage, and turning on/off the air conditioning systems throughout the Yacht.

34. Moca LLC had the crew, including Bartha, work more than 12 hours a day.

35. The Yacht experienced high crew turn-over due to Moca LLC's exacting demands and long work hours.

36. The Yacht can accommodate 24 crew members.

37. However, the Yacht was understaffed with about 16 crew members while Bartha served as chief stewardess.

38. Moca LLC required the crew to wear a specific uniform and shoes while working aboard the Yacht.

39. Moca LLC supplied the uniforms and shoes to the crew.

40. On or about August 24, 2021, Sharon Matte, a Hill Robinson employee in the Fort Lauderdale office, called Bartha at home and asked if she was immediately available to serve as the Yacht's chief stewardess.

41. Ms. Bartha happened to be available and she subsequently spoke with the Yacht's captain about the chief stewardess position.

42. The Yacht's captain, acting on behalf of Moca LLC, hired Bartha by verbal agreement to serve as the chief stewardess.

43. The verbal employment agreement was that Bartha would serve as chief stewardess for the Yacht at a day rate of $325.00 for August and start on a salary of $8,000/month in September going forward.

44. On August 26, 2021, Bartha joined the Yacht and started working as chief stewardess.

45. Ms. Bartha was provided a uniform when she joined the Yacht.

46. Ms. Bartha asked for shoes in her size but none were available.

47. Ms. Bartha was not allowed to wear her own shoes pending delivery of the properly sized work shoes.

48. Another crew member provided Bartha a spare set of work shoes but they were too big for her feet.

49. The Yacht's galley is located on a deck that is below the dining area.

50. The Yacht is equipped with a dumbwaiter to enable the crew to move plates, dishes, glassware, and eating utensils between the galley and dining area.

51. The Yacht's dumbwaiter was broken or out-of-service during the term of Bartha's employment.

52. The Yacht is also equipped with an elevator that enables the owner and guests to move from deck to deck.

53. However, the Yacht's elevator was also broken or out-of-service during the term of Bartha's employment.

54. During September 3 - 4, 2021, the Yacht was at anchor in the navigable waters of the United States of America and the Moinians were hosting numerous family members and guests on board the Yacht for the Jewish holiday.

55. The owners and their guests required a lot of time and attention from the Yacht's understaffed crew, which resulted in the crew working very long, exhausting hours.

56. Ms. Bartha started working at 9:30 AM, September 3, 2021 and continued working until the incident occurred about 2:00 AM, September 4, 2021.

57. During the early morning hours of September 4, 2021, Bartha had to move dirty dishes, glassware, utensils, etc., from the dining area, down a steep staircase, to the galley.

58. The wind and seas (waves) increased during the evening of September 3 – 4, 2021, which caused the Yacht to rock while it was anchored in the bay.

59. Ms. Bartha could not use the Yacht's dumbwaiter or elevator to move the dirty dishes, etc., from the dining area down to the galley because the systems were not operational.

60. Ms. Bartha made several trips moving dirty dishes, utensils, etc., from the dining area, down a steep staircase, to the galley before the incident.

61. At approximately 2:00 AM, September 4, 2021, Bartha was carrying two crystal glasses in her hand and had her other hand on the handrail as she descended the steep staircase.

62. As Bartha, who was fatigued, wearing shoes too large for her feet, and descending the steep staircase while the Yacht was rocking, her right foot slipped out of the oversized shoe, she fell, and sustained a right bimalleolar ankle fracture and right distal tibia/fibula syndesmotic injury.

**COUNT I**
**BARTHA'S UNSEAWORTHINESS CLAIM AGAINST MOCA LLC**

63. Ms. Bartha re-alleges the allegations contained in paragraphs 2(a), 3, 5 through 13, and 18 through 62 of the Verified Second Amended Complaint as if fully set forth herein.

64. This cause of action is governed by the general maritime law of the United States of America.

65. General maritime law provides for joint and several liability between tortfeasors.

66. Moca LLC and M/Y *Moca* are joint tortfeasors in regard to the September 4, 2021 incident.

67. Moca LLC has an absolute, non-delegable duty to provide a seaworthy vessel to the crew, including Bartha, so that the vessel is reasonably safe and fit for its intended purpose.

68. On or about September 4, 2021, Moca LLC breached its non-delegable duty to provide Bartha a reasonably safe and fit vessel because of one or more of the following defects that existed at the time of the incident:

a. There were inadequate rest hours for the crew, including Bartha;

b. Bartha was provided oversized shoes to perform the work. Stated in a different way, the Yacht did not have a supply of shoes to properly outfit new crew members;

c. The Yacht's dumbwaiter was not in working order;

d. The Yacht's elevator was not in working order;

e. The Yacht did not have sufficient crew to perform all of the work demanded of them and allow for necessary rest hours;

f. The Yacht's stairs were not reasonably safe because they were too steep, the steps were not deep enough for the crew to safely step down on to each step while descending the stairs, the steps were not

the same distance apart, the steps did not have sufficient anti-slippery surface on them, or the anti-slippery surface was allowed to deteriorate to where the steps did not provide a sufficient anti-slip surface, or other defects that may be learned through discovery; and/or,

g. There was inadequate or no safety management and/or inspections of the Yacht to: (i) identify and correct hazards on board; (ii) make sure the equipment, like the dumbwaiter and elevator, were maintained in proper working order; (iii) make sure the Yacht was staffed with sufficient numbers of crew; (iv) make sure crew were allowed sufficient rest; (v) ensure the Yacht was supplied with appropriate sizes of footwear for the crew; (vi) or, alternatively, establish a rule that would allow the crew, like Bartha, to use their own shoes until proper fitted work shoes are provided to them.

69. Ms. Bartha sustained serious and permanent injuries during the September 4, 2021 incident and her injuries were proximately caused by Moca LLC's breach of the non-delegable duty to provide a seaworthy vessel that was reasonably fit for its intended purpose.

70. As a direct or proximate result of the unseaworthiness of the Yacht, Bartha sustained damages consisting of past and future pain and suffering, mental anguish, past and future loss of enjoyment of life, permanent physical impairment, permanent disability, disfigurement, aggravation of any previously existing conditions, past and future medical expenses in the care and treatment of her injuries, past and future loss of wages, and loss of earning capacity.

71. Ms. Bartha's injuries are permanent and continuing in nature and she will suffer losses and impairment in the future.

72. Ms. Bartha's unliquidated damages for past and future pain and suffering, past and future loss of enjoyment of life, mental anguish, disability, disfigurement, past and future loss of earnings, loss of earning capacity, and other loss of physical functions are substantial and estimated to be in excess of U.S. one million dollars (>$1,000,000.00).

WHEREFORE, Plaintiff, Anna Bartha, demands the Court enter final judgment against Defendant, Moca LLC, jointly and severally, and award her compensatory damages, prejudgment interest, costs and such other and further relief the Court deems proper. To the extent necessary, Plaintiff, Anna Bartha, also requests the Court to enter such Orders as may be necessary to compel Assuranceforeningen Skuld and/or the surety bond company to pay the amounts awarded to Plaintiff. The Court has personal jurisdiction over Assuranceforeningen Skuld for purposes of compelling Skuld to meet its obligations under the LOU. See Exhibit "1," ¶ 6.

**COUNT II**
**BARTHA'S UNSEAWORTHINESS CLAIM AGAINST M/Y *MOCA***

73. Ms. Bartha re-alleges paragraphs 2(a), 3, 5 through 13, 18 through 62, and 64 through 66 of the Verified Second Amended Complaint as if fully set forth herein.

74. Under the general maritime law, the Yacht is considered a juristic person whose acts and omissions, although brought about by her personnel, are personal acts of the vessel for which, as a juristic person, it is legally responsible. *Canadian Aviator v. U.S.*, 324 U.S. 215, 224, 65 S.Ct. 639, 644 (1945); *The John G. Stevens*, 170 U.S. 113, 121, 18 S.Ct. 544, 547-48 (1898).

75. Seamen, like Bartha, can sue the shipowner and vessel for unseaworthiness. *McAllister v. Magnolia Petroleum Co.*, 357 U.S. 221, 226, 78 S.Ct. 1201, 1205 (1958); *Mahnich v. Southern S.S. Co.*, 321 U.S. 96, 99, 64 S.Ct. 455, 457 (1944).

76. M/Y *Moca* has an absolute, non-delegable duty to be a seaworthy vessel for the crew, including Bartha, so that it is reasonably safe and fit for its intended purpose.

77. On or about September 4, 2021, M/Y *Moca* breached its non-delegable duty to be a reasonably safe and fit vessel for Bartha because of one or more of the following defects or unseaworthy conditions that existed at the time of the incident:

a. There were inadequate rest hours for the crew, including Bartha;

b. Bartha was provided oversized shoes to perform the work. Stated in a different way, the Yacht did not have a supply of shoes to properly outfit new crew members;

c. The Yacht's dumbwaiter was not in working order;

d. The Yacht's elevator was not in working order;

e. The Yacht did not have sufficient crew to perform all of the work demanded of them and allow for necessary rest hours;

f. The Yacht's stairs were not reasonably safe because they were too steep, the steps were not deep enough for the crew to safely step down on to each step while descending the stairs, the steps were not the same distance apart, the steps did not have sufficient anti-slippery surface on them, or the anti-slip surfaces were allowed to deteriorate to where they did not provide a sufficient anti-skid, or other defects that may be learned through discovery; and/or,

g. There was inadequate or no safety management and/or inspections of the Yacht to: (i) identify and correct hazards on board; (ii) make sure the equipment, like the dumbwaiter and elevator, were maintained in proper working order; (iii) make sure the Yacht was staffed with sufficient numbers of crew; (iv) make sure crew were allowed sufficient rest; (v) ensure the Yacht was supplied with appropriate

sizes of footwear for the crew to use; (vi) or, alternatively, establish a rule that would allow the crew, like Bartha, to use their own shoes until proper fitted work shoes are provided to them.

78. Ms. Bartha sustained serious and permanent injuries during the September 4, 2021 incident and her injuries were proximately caused by M/Y *Moca*'s breach of its non-delegable duty to be a seaworthy vessel that was reasonably fit for its intended purpose.

79. As a direct or proximate result of the unseaworthiness of the Yacht, Bartha sustained damages consisting of past and future pain and suffering, mental anguish, past and future loss of enjoyment of life, permanent physical impairment, permanent disability, disfigurement, aggravation of any previously existing conditions, past and future medical expenses in the care and treatment of her injuries, past and future loss of wages, and loss of earning capacity.

80. Ms. Bartha's injuries are permanent and continuing in nature and she will suffer losses and impairment in the future.

81. Ms. Bartha's unliquidated damages for past and future pain and suffering, past and future loss of enjoyment of life, mental anguish, disability, disfigurement, past and future loss of earnings, loss of earning capacity, and other loss of physical functions are substantial and estimated to be in excess of U.S. one million dollars (>$1,000,000.00).

82. Ms. Bartha has a preferred maritime tort lien against M/Y *Moca* for her injuries and damages.

83. Ms. Bartha is entitled under the general maritime law to foreclose her maritime tort lien against the *in rem* Defendant, M/Y *Moca*, which is secured by Skuld's LOU (or a surety bond). See Exhibit "1" attached hereto.

WHEREFORE, Plaintiff, Anna Bartha, demands the following relief:

A. That the Court decree that Plaintiff, Anna Bartha, has a preferred maritime tort lien

upon the *in rem* Defendant, M/Y *Moca*, and that her lien is secured by Skuld's LOU (or surety bond, if any);

B. That judgment be entered against the *in rem* Defendant, M/Y *Moca*, jointly and severally, for all of Plaintiff's damages together with prejudgment interest, and costs;

C. That the Court foreclose Plaintiff, Anna Bartha's, preferred maritime tort lien against M/Y *Moca* and order Assuranceforeningen Skuld (or surety bond company, if applicable) to pay Anna Bartha the amount of the judgment award; and,

D. For such other relief this Court may deem just and proper.

**COUNT III**
**BARTHA'S JONES ACT NEGLIGENCE CLAIM AGAINST MOCA LLC**

84. Ms. Bartha re-alleges the allegations in paragraphs 1, 5 through 14, and 18 through 62 of the Verified Second Amended Complaint as if fully set forth herein.

85. This is a Jones Act negligence cause of action under Title 46 U.S.C. § 30104 against Moca LLC in its capacity as Bartha's employer. Ms. Bartha demands a jury trial of her Jones Act claim as provided by the statute.

86. Moca LLC owes a duty of care to provide the crew, including Bartha, a reasonably safe place to work.

87. Moca LLC breached its duty of care to provide Bartha a reasonably safe place to work because of one or more of the following acts or omissions:

a. There were inadequate rest hours for the crew, including Bartha;

b. Bartha was provided oversized shoes to perform her work and/or she was not allowed to wear her own properly fitted shoes until appropriately sized footwear was provided to her;

c. The Yacht's dumbwaiter was not maintained in operational condition so the crew, including Bartha, could use it;

d. The Yacht's elevator was not maintained in operational condition so the crew, including Bartha, could use it;

e. The Yacht did not have sufficient crew to perform all of the work demanded of them and allow the crew, including Bartha, to have necessary rest;

f. The Yacht's stairs were not maintained in reasonably safe condition because they were too steep, the steps were not deep enough for the crew to safely step on to while descending the stairs, the steps were not the same distance apart, the steps did not have sufficient anti-slippery surfaces on them, or the anti-slippery surfaces were allowed to deteriorate to where they did not provide sufficient anti-slip surface, or other defects that may be learned through discovery; and/or,

g. There was inadequate or no inspections made to: (i) identify and correct hazards on board the Yacht; (ii) ensure the equipment was kept in proper working order; (iii) make sure the crew, including Bartha, were provided sufficient rest/sleep; (iv) ensure there was a proper supply of shoes for the crew; (v) or, alternatively, allow the crew to work in their own shoes until properly fitted work shoes were provided to them.

88. Ms. Bartha sustained serious and permanent injuries during the September 4, 2021 incident and her injuries were directly or proximately caused by Moca LLC's breach of its duty to provide a reasonably safe place to work.

89. As a direct or proximate result of Moca LLC's breach of duty to provide a reasonably safe place to work, Bartha sustained damages consisting of past and future pain and suffering, mental anguish, past and future loss of enjoyment of life, permanent physical impairment, permanent disability, disfigurement, aggravation of any previously existing conditions, past and future medical expenses in the care and treatment of her injuries, past and future loss of wages, and loss of earning capacity.

90. Ms. Bartha's injuries are permanent and continuing in nature and she will suffer losses and impairment in the future.

WHEREFORE, Plaintiff, Anna Bartha, demands the Court enter final judgment against Defendant, Moca LLC, jointly and severally, and award her compensatory damages, prejudgment interest, costs and such other and further relief the Court deems proper.

**COUNT IV**
**BARTHA'S JONES ACT NEGLIGENCE CLAIM AGAINST MOCA LLC**
**FOR FAILURE TO PROVIDE PROMPT, PROPER AND ADEQUATE CARE**

91. Ms. Bartha re-alleges the allegations in paragraphs 1, 5 through 14, and 18 through 62 of the Verified Second Amended Complaint as if fully set forth herein.

92. This is a separate Jones Act negligence cause of action against Moca LLC that concerns its failure to provide Bartha with prompt, proper, and adequate medical care after she was injured on or about September 4, 2021.

93. As employer, Moca LLC has a duty to investigate Bartha's need for maintenance (i.e. a reasonable living allowance) and cure (medical care to treat Bartha's work related injuries).

94. Ms. Bartha sent numerous emails to Moca LLC's agent, Hill Robinson, requesting maintenance and cure. See Composite Exhibit "2."

95. Moca LLC notified the crew health insurance company about Bartha's work-related injury after the incident but did nothing afterward. See Composite Exhibit "2."

96. As described more fully below, Moca LLC breached its duty to investigate by not taking timely action to determine whether Bartha is receiving proper medical care or how much financial support she needs while she is not fit to work.

97. Moca LLC did not pay maintenance to Bartha for the period of December 25, 2021 through September 30, 2022.

98. Moca LLC first started paying maintenance to Bartha on October 25, 2022 when its third party administrator, Hill Robinson, paid $3,300.00 for Bartha’s October 2022 maintenance.

99. Ms. Bartha’s recovery has been adversely affected by the Defendants’ failure to timely investigate and provide timely medical care to her.

100. Ms. Bartha needs more medical treatment for her work-related injuries and her physical and mental well-being has sustained further injury because of Moca LLC’s failure to timely investigate and provide her with proper medical care.

101. Ms. Bartha was not able to timely obtain all the physical therapy that was prescribed to her because the employer’s crew health insurance policy has limited coverage for physical therapy.

102. In other words, Bartha was not able to complete the course of physical therapy prescribed to her because the crew medical insurance was exhausted and Moca LLC did not step up to pay for it.

103. Ms. Bartha had to go back to work to earn money to support herself before she reached maximum medical cure.

104. Ms. Bartha’s ability to reach maximum medical cure was adversely affected and prolonged by having to work before she reached maximum medical cure.

105. In addition, Bartha has developed depression because of the stress and anxiety inflicted by the employer, Moca LLC’s, failure to timely investigate and provide cure to her.

106. Ms. Bartha demanded psychiatric treatment for her depression, which was caused by Moca LLC's failure to timely provide cure but Moca LLC has not provided treatment for this condition.

107. Ms. Bartha's skin condition worsened because of the stress and anxiety caused by her employer, Moca LLC's, failure to timely investigate and provide cure and/or maintenance to her.

108. Ms. Bartha sustained additional damages because her physical and mental well-being was aggravated by Moca LLC's failure to timely investigate and provide her with prompt, proper and adequate medical care

WHEREFORE, Plaintiff, Anna Bartha, demands the Court enter final judgment against Defendant, Moca LLC, and award her compensatory damages, prejudgment interest, costs and such other and further relief the Court deems proper.

**COUNT V**
**BARTHA'S MAINTENANCE AND CURE CLAIM AGAINST MOCA LLC**

109. Ms. Bartha re-alleges the allegations in paragraphs 2(b), 3, 5 through 62, 94, 95, 97, 98, and 101 through 107 of the Verified Second Amended Complaint as if fully set forth herein.

110. This is a cause of action for maintenance and cure under the general maritime law.

111. Moca LLC and M/Y *Moca* are jointly and severally liable for Bartha's maintenance and cure.

112. Moca LLC has a non-delegable duty to provide Bartha with maintenance and cure for her work-related injuries, which occurred during her service aboard the Yacht. Moca LLC's non-delegable duty includes timely investigating Bartha's need for maintenance and cure.

113. After the lawsuit was filed, Bartha provided Moca LLC's defense counsel with signed HIPAA releases on May 25, 2022 and June 16, 2022.

114. Ms. Bartha's counsel also forwarded copies of Bartha's medical records, and maintenance and cure documentation to Moca LLC's defense counsel soon after the suit was filed in April 2022.

115. Moca LLC did not pay any maintenance to Bartha before October 25, 2022.

116. Furthermore, Moca LLC has not paid all the medical bills for Bartha's treatment of her work-related injuries. The crew health insurance policy does not pay all of the amounts billed by the medical providers for the treatment they provided for Bartha's injuries.

117. Ms. Bartha is being pursued for payment of outstanding medical bills regarding treatment of her work-related injuries and her credit rating has been adversely impacted by the unpaid bills.

118. Moca LLC breached its non-delegable duty to provide Bartha with maintenance and cure by:

a. Failing to timely and adequately investigate Bartha's maintenance and cure claim, including her need for curative treatment, and living expenses while she is not fit for duty;

b. Failing to pay all of Bartha's medical expenses for curative medical treatment;

c. Failing to reimburse Bartha for all of her out-of-pocket medical expenses;

d. Failing to make timely arrangements for Bartha to receive follow-up curative care after her initial surgery;

e. Failing to pay a reasonable maintenance allowance to support Bartha while she is undergoing curative treatment; and,

f. Forcing Bartha to return to work through economic compulsion when she is not physically fit to do so.

119. Moca LLC willfully and arbitrarily failed to investigate and pay maintenance and provide cure to Bartha for her work-related injuries, and such conduct aggravated and/or prolonged her recovery for which Bartha seeks compensatory damages for her pain and suffering, mental anguish, permanent disability, future lost earnings, medical expenses incurred, reasonable attorney's fees for having to file this action to procure maintenance and cure, punitive damages to deter Moca LLC from engaging in this type of conduct in the future, and court costs.

WHEREFORE, Plaintiff, Anna Bartha, demands the Court enter final judgment against Defendant, Moca LLC, jointly and severally, and award her compensatory damages, punitive damages, attorneys' fees, prejudgment interest, costs and such other and further relief the Court deems proper.

**COUNT VI**
**BARTHA'S MAINTENANCE AND CURE CLAIM AGAINST M/Y *MOCA***

120. Ms. Bartha re-alleges the allegations in paragraphs 2(b), 3, and 5 through 62 , 94, 95, 97, 98, 101 through 107, and 110 through 117, of the Verified Second Amended Complaint as if fully set forth herein.

121. This is a cause of action for maintenance and cure against M/Y *Moca*, *in rem*.

122. M/Y *Moca* is vicariously or technically liable for the failure of its owner, Moca LLC, to provide timely maintenance and cure to Bartha.

123. Despite knowing about Plaintiff's injuries, M/Y *Moca* did not take adequate steps to investigate Bartha's claims for medically needed treatment, her need for maintenance while she is unable to work because of her work-related injuries, or the amount owed to her for her out-of-pocket medical expenses.

124. M/Y *Moca* has a non-delegable duty to provide Bartha with maintenance and cure for her injuries, which occurred during her service aboard the Yacht.

125. M/Y *Moca* breached its non-delegable duty to provide Bartha with maintenance and cure by:

a. Failing to adequately investigate Bartha's maintenance and cure claim, including her need for curative treatment and living expenses while she is not fit for duty;

b. Failing to reimburse Bartha for out-of-pocket medical and living expenses;

c. Failing to make timely arrangements for Bartha to receive follow-up curative care after her initial surgery;

d. Failing to pay maintenance to support Bartha while she is undergoing curative treatment;

e. Failing to pay all of Bartha's medical expenses for her injuries; and/or

f. Forcing Bartha to return to work through economic compulsion when she is not physically fit to do so.

126. Ms. Bartha has a preferred maritime lien against the Yacht for her maintenance and cure.

127. Ms. Bartha brings this action to foreclose her preferred maritime lien against the Yacht, which is secured by Skuld's LOU. See Exhibit "1."

128. M/Y *Moca* willfully and arbitrarily failed to pay maintenance and provide cure to Bartha for her injuries, and such conduct aggravated and/or prolonged her recovery for which Bartha seeks compensatory damages for her pain and suffering, mental anguish, permanent disability, future

lost earnings, medical expenses incurred, reasonably attorney's fees for having to file this action to procure maintenance and cure, punitive damages to deter this type of conduct in the future, and court costs.

WHEREFORE, Plaintiff, Anna Bartha, demands the Court provide the following relief:

A. That the Court decree that Plaintiff, Anna Bartha, has a preferred maritime lien for maintenance and cure upon the *in rem* Defendant, M/Y *Moca*, and that her lien is secured by Skuld's LOU (or surety bond, if any);

B. That judgment be entered against the *in rem* Defendant, M/Y *Moca*, jointly and severally, for all of Plaintiff's damages together with prejudgment interest, and costs;

C. That the Court foreclose Plaintiff, Anna Bartha's, preferred maritime lien for maintenance and cure against M/Y *Moca* and order Assuranceforeningen Skuld (or surety bond company, if applicable) to pay Anna Bartha the amount of the judgment award; and,

D. For such other relief this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

129. Ms. Bartha demands a jury trial of her Jones Act negligence claim as a statutory right under Title 46 U.S.C. § 30104. In addition, Bartha moves the Court to allow a jury trial of her maritime claims pursuant to Federal Rule of Civil Procedure 39(c) and the Supreme Court's holding in *Fitzgerald v. United States Lines Co.*, 374 U.S. 16 (1962).

Dated: December 13, 2022.

Respectfully submitted,

By: */s/ James W. Stroup*
JAMES W. STROUP
Florida Bar No. 842117
FARRIS J. MARTIN III
Florida Bar No. 879116
Stroup & Martin, P.A.

119 Southeast 12th Street
Fort Lauderdale, Florida 33316
Telephone: (954) 462-8808
E-mail: fmartin@strouplaw.com
E-mail: jstroup@strouplaw.com
*Attorneys for Plaintiff*

[Plaintiff's verification of the Complaint is on the next page]

**VERIFICATION**

1. I, Anna Bartha, am over twenty-one years of age and make this verification in support of my action against the Defendants.

2. I have read the Verified Second Amended Complaint, I know the contents thereof, and the facts alleged therein are true based on my personal knowledge, information, and belief.

3. I have not been declared at maximum medical cure. I need further curative treatment to reach maximum medical cure.

4. I have not received maintenance for the period from December 25, 2021 through September 30, 2022.

5. Defendants have not paid all of my medical bills nor fully reimbursed me for my out-of-pocket medical expenses.

Pursuant to Title 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 12, 2022.

Anna Bartha

ANNA BARTHA

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed with this Court's CM/ECF docketing system this 13th day of December, 2022, and that it is being served via CM/ECF on the counsel of record shown on the Service List.

By: */s/ James W. Stroup*
JAMES W. STROUP
Florida Bar No.: 842117

**SERVICE LIST**

Darren Friedman, Esq.
Cecile Von Batemberg, Esq.
Jeffrey Foreman, Esq.
FOREMAN FRIEDMAN, P.A.
2 South Biscayne Boulevard
Suite 2300
Miami, Florida 33131
Telephone: (305) 358-6555
Email: dfriedman@fflegal.com
Email: cvbatemberg@fflegal.com
Email: jforeman@fflegal.com
Email: kfehr@fflegal.com
Email: sargy@fflegal.com
Email: lvargas@fflegal.com
*Counsel for Defendants*